UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MERCER CAPITAL, LTD.,

        Plaintiff,

  -v-                                                                                             No.  08 Civ. 05763 (LTS)(JCF)

U.S. DRY CLEANING CORPORATION,

        Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Mercer Capital, Ltd. ("Mercer" or "Plaintiff") commenced this action against defendant U.S. Dry Cleaning Corporation ("Dry Cleaning" or "Defendant") seeking to recover commission payments and other compensation allegedly due to it under a placement agency contract for the sale of Defendant's securities to accredited investors. Defendant has asserted six counterclaims, seeking a declaratory judgment that the contract never became binding, and seeking damages for breach of contract by Plaintiff, fraudulent inducement, negligent misrepresentation, reformation of contract, and recovery for unjust enrichment. Plaintiff now moves to dismiss Defendant's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted. Defendant cross-moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking a determination that Plaintiff is not entitled to any compensation for sales that Defendant made. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1). For the following reasons, both motions are denied.

BACKGROUND

According to the complaint (the "Complaint"), Plaintiff is a registered broker/dealer. (Compl. at ¶ 15.) According to the answer (the "Answer"), Defendant is an up and coming national chain of dry cleaning businesses. (Answer at ¶ 75.) On September 1, 2007, Plaintiff and Defendant signed an Engagement Agreement (hereinafter the "Agreement")[1] which, among other terms and conditions, appointed Plaintiff the "[E]xclusive Placement Agent" (Agreement at § 2(a), Ex. 1 to Salino Aff.) to offer and sell, to accredited investors, a minimum of $2,000,000 and a maximum of $20,000,000 of Defendant's senior secured convertible notes (Agreement at 1). A Private Placement Memorandum ("Private Placement Memorandum")[2] was presented to investors interested in buying Defendant's securities. (Compl. at ¶ 25.)

Plaintiff brought suit in June 2008, alleging that Defendant breached the Agreement by failing to pay an outstanding balance of approximately $559,869 (Compl. at ¶ 46), to provide Plaintiff with five-year warrants to purchase 485,840 shares of common stock at $2.50 per share (Compl. at ¶ 47), and to pay Plaintiff 9% of the issue price of the notes sold in the offering (the "Offering") that have been converted on or before the maturity dates of the notes (Compl. at ¶¶ 51-54). Plaintiff also asserted a claim for unjust enrichment (Compl. at ¶¶ 56-61), and requested an accounting of all the notes that have been or will be converted (Compl. at ¶¶ 62-65). Defendant

---

[1]  Defendant has not disputed the accuracy of the copy of the Engagement Agreement that is annexed to Plaintiff's motion to dismiss the counterclaims. The Court can consider the Engagement Agreement in connection with this motion practice because Defendant incorporated it in its counterclaims by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

[2]  A copy of the Private Placement Memorandum was submitted by Plaintiff as Exhibit 2 to the Salino Affidavit in support of its motion to dismiss the counterclaims. Defendant has not disputed the accuracy of the submitted copy.

Dry Cleaning's Answer interposed counterclaims seeking a declaratory judgment that the Agreement is not binding on either party because Plaintiff allegedly did not perform a condition precedent that required Plaintiff to have raised $2,000,000 by the initial closing date. (Answer at ¶ 114.) Defendant also seeks relief for breach of the Agreement, fraud, negligent misrepresentation, unjust enrichment, and reformation of contract to correct two alleged scrivener's errors. (Answer at ¶¶ 115-53.)

<u>Defendant's Allegations in Support of its Counterclaims</u>

In its Answer, Defendant alleges the following facts, which are accepted as true for the purposes of Plaintiff's motion to dismiss the counterclaims. In or about Spring 2007, Defendant sought to raise capital through the offer and sale of its securities. (Answer at ¶ 76.) When Defendant sought a placement agent for an offering of its securities, Plaintiff offered its services. (Answer at ¶ 77.) Plaintiff's Director of Investment Banking, Chief Operating Officer/Principal and the head of institutional sales met with Defendant numerous times prior to contracting for Plaintiff to act as placement agent. (Answer at ¶¶ 78-83.) During these meetings, these three officers represented that Plaintiff's institutional investment arm and retail brokers had committed to raise $5,000,000 each ($10,000,000 total). (Answer at ¶¶ 80-81.) Plaintiff's officers also stated that, given Mercer's expertise and capacity to handle larger offerings, they could easily raise $100 million for Defendant. (Answer at ¶ 79.) Plaintiff's officers further stated that they had strong working relationships with syndicates of other brokerage firms such as National Securities, Newbridge Securities Corporation, J.P. Turner & Company, LLC, Joseph Stevens and Company, Inc., and numerous other firms and that Plaintiff could easily raise additional money through these connections. (Answer at ¶ 82.) Further, Plaintiff's officers stated that, if Defendant chose Plaintiff as the placement agent, Plaintiff would make the sale of Defendant's securities its sole focus and

would not work on any other deals while raising money for Defendant. (Answer at ¶ 83.) Plaintiff's representations were false (Answer at ¶ 91), and Plaintiff knew that the representations were false, but made them to induce Defendant to enter into the Agreement (Answer at ¶¶ 80-83, 91-93, 95).

Defendant alleges that it entered into the Agreement in reliance on the representations made by Plaintiff's officers. (Answer at ¶ 84.) Plaintiff thereafter prioritized the offerings of other client companies before Defendant's, and Plaintiff's brokers would not sell Defendant's securities until they obtained an appropriate level of investment in the other offerings. (Answer at ¶ 96.) Plaintiff failed to raise even the $2,000,000 minimum offering amount. (Answer at ¶ 100.) Due to Plaintiff's inability to raise capital for Defendant, Defendant had to raise money on its own and successfully raised approximately $7,300,000. (Answer at ¶¶ 101-03.) In raising the capital on its own, Defendant incurred fees, charges, expenses, and disbursements of approximately $500,000. (Answer at ¶ 104.) Further, Defendant was forced to close the Offering with a material shortfall in funds, and this caused Defendant's market capitalization to drop approximately in half from approximately $40,000,000 to approximately $20,000,000. (Answer at ¶ 105.)

### The Engagement Agreement and the Private Placement Memorandum

The following facts are undisputed. The Agreement signed by Plaintiff and Defendant provided that Plaintiff was the "exclusive Placement Agent" (Agreement at § 2(a)), and would use its "'reasonable efforts' to offer and sell to accredited investors a minimum of $2,000,000 . . . and a maximum of $20,000,000 . . . of [s]ecurities." (Agreement at 1). Under section three of the Agreement, Plaintiff's compensation included a $35,000 retainer fee

(Agreement at § 3(a)), "[t]en percent (13%) [sic]³ of the gross proceeds raised by Mercer Capital" (Agreement at § 3(b)), and "[a] non accountable expense allowance . . . equal to three percent (2%) [sic] of the gross proceeds raised by Mercer Capital" (Agreement at § 3(c)).

The terms of compensation for Plaintiff are described in the Private Placement Memorandum dated October 8, 2007. According to the Private Placement Memorandum, Plaintiff was to receive, among other things, "(i) a selling commission aggregating 13% of the gross proceeds of the Offering, (ii) a non-accountable expense allowance equal to 2% of the gross proceeds of the Offering . . . ." (Private Placement Memorandum at Page 27.)

Under the heading "Conditions of Closing and Placement Agent's Obligations," the Agreement provides that " [o]n the Initial Closing Date, no less than the Minimum Offering [$2,000,000] shall have been subscribed for and accepted by the Company [Defendant]." (Agreement at § 7(a).) The Agreement also contains a general merger provision. (Agreement at § 11.)

DISCUSSION

Motion to Dismiss Counterclaims

In deciding a motion to dismiss a counterclaim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the allegations in the counterclaim as true and draw all reasonable inferences in the counterplaintiff's favor. See New York Mercantile Exchange v. Intercontinental Exchange, 323 F. Supp. 2d 559, 561 (S.D.N.Y. 2004) (internal citations omitted). The issue is whether the counterplaintiff is entitled to offer

---

[3] The discrepancies in sections 3(b)-(c) are in the Agreement. Defendant, as part of the relief requested in its counterclaims, asks the Court to reform the Agreement to correct these discrepancies.

evidence to support his claims. See Hudson Valley Black Press v. Internal Revenue Service, 307 F. Supp. 2d 543, 545 (S.D.N.Y. 2004). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). This Twombly standard applies to all civil actions. Id. at 1953.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Particularity requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal citations omitted). The issue is whether the allegations provide a fair and reasonable notice of the time, place, speaker, and content of the alleged misrepresentation or omission. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128-29 (2d Cir. 1994).

*Declaratory Judgment*

Defendant counterclaims for a declaratory judgment that the Agreement is not binding on either party because Plaintiff did not raise $2,000,000 by the initial closing date, and therefore failed to perform a condition precedent to Defendant's liability under the Agreement. Plaintiff argues that the counterclaim should be dismissed because Mercer had no obligation under the Agreement to raise a minimum amount, that $2,000,000 was in fact raised and, even if the amount was not raised as required, Defendant waived any condition precedent by continuing with

the Offering.  Mercer relies on "best efforts" language in the Agreement, Defendant's continuation of the Offering, as reported in various press releases and SEC filings, and the fact of Defendant's payment of certain of the compensation contemplated by the Agreement.

Having considered carefully the allegations in support of the counterclaim and the parties' arguments, the Court finds that the declaratory judgment counterclaim is plead sufficiently to state a claim upon which relief may be granted.  The parties' positions are dependent on factual issues that cannot be resolved without resort to matters that are not integral to the Complaint, as well as the resolution of questions of contract construction that cannot be resolved on the current record.

*Breach of Contract*

In its second counterclaim, Defendant alleges that Plaintiff breached the Agreement by not using reasonable efforts to raise the initial $2,000,000.  Defendant alleges, among other things, that Plaintiff did not have certain commitments from institutional investors and brokers, and subordinated its efforts on Defendant's behalf to selling efforts in connection with the securities of other clients and that Defendant, on the other hand, fully performed its obligations under the Agreement. (Answer at ¶¶ 118-19.)  Plaintiff argues that Defendant's breach of contract claim should be dismissed because (1) Plaintiff had no obligation to raise a minimum amount under the Agreement, (2) Plaintiff fully performed the Agreement, and (3) Defendant waived its rights to claim that Plaintiff failed to raise the minimum amount under the Agreement by not canceling the Agreement, continuing to raise money under the Offering, and by paying some commissions to Plaintiff. (Motion to Dismiss Counterclaims at Pages 5-8.)

To succeed on a claim for breach of contract under New York law, Defendant must provide "proof of (1) a contract; (2) performance of the contract by one party; (3) breach by

the other party; and (4) damages." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). Taking Defendant's allegations as true and drawing all reasonable inferences in favor of Defendant, Dry Cleaning has sufficiently alleged a breach of contract counterclaim. Plaintiff's grounds for dismissal are again dependent on the resolution of interpretive and factual issues that cannot properly be determined on the current record. Plaintiff's motion is therefore denied insofar as it seeks dismissal of Defendant's second counterclaim.

*Fraudulent Inducement*

Under New York law, the essential elements of a fraud claim include "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." Turtur v. Rothschild Registry International, Inc., 26 F.3d 304, 310 (2d Cir. 1994). Plaintiff seeks the dismissal of Defendant's third counterclaim, which alleges that Plaintiff fraudulently induced Defendant to enter into the Agreement by means of false representations concerning Plaintiff's capital raising experience, intentions and capabilities, on the ground that such a claim is precluded by the merger provision of the Agreement. Plaintiff further argues that Defendant has failed to plead this fraud claim with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The merger provision of the Agreement is a general one, reciting that:

> This Engagement Agreement constitutes the complete agreement and understanding among the parties and supersedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way. There are no understandings, express or implied, related to the subject matter hereof that are not expressly set forth in this Engagement Agreement.

(Agreement § 11, Ex. 1 to Salino Aff.) This provision, Plaintiff contends, precludes any viable argument that Defendant reasonably relied on any pre-contractual representations by Plaintiff.

Where, however, a pleading "states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud – either in the inducement or in the execution – despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320 (1959); see also Wall v. CSX Transp., Inc., 471 F.2d 410, 416 (2d Cir. 2006) ("New York . . . permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause."). Plaintiff's argument that the fraudulent inducement counterclaim is precluded by the merger clause of the Agreement, which stipulates that it is governed by New York Law (Agreement § 13), thus must be rejected.

Defendant alleges that, in meetings and conversations that took place in July and August 2007, Plaintiff's Director of Investment Banking, its Chief Operating Officer, and its head of institutional sales falsely represented that, among other things, Mercer could easily sell up to $100,000,000 of Dry Cleaning's securities, had effective market connections and strong working relationships with syndicates of other brokerage firms, and had already secured certain commitments for Dry Cleaning's securities sales, in order to induce Defendant to contract with Plaintiff. (Answer at ¶¶ 78-83.) Defendant's detailed pleading as to these matters meets the specificity requirements of Rule 9(b) because Defendant sufficiently alleges the misrepresentations that were made, the time that the misrepresentations took place, the medium that Plaintiff's officers used to make the misrepresentations, and the reason why the statements were false. Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (stating that a fraud claim requires a statement of the allegedly fraudulent information, the names of the speakers of the allegedly fraudulent statements, the place and time such statements were made, and an explanation of why the statements were fraudulent).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure only requires Defendant to plead Plaintiff's intent to defraud generally. Defendant alleges that Plaintiff's officers knew of the falseness of their representations and made them with the intent of inducing Defendant to contract with Plaintiff. (Answer at ¶¶ 123-24.)

Defendant has also alleged sufficiently its reliance on the alleged misrepresentations. According to Defendant, Dry Cleaning relied on Plaintiff's status as a member firm of the National Association of Securities Dealers and National Investment Banking Association as well as Plaintiff's representations about significant relationships in the financial markets, and entered into the Agreement on this basis. (Answer at ¶¶ 84, 125.) Because Defendant's counterclaim plausibly states the elements of fraud with the requisite specificity, Plaintiff's motion to dismiss the fraud counterclaim is denied.

*Negligent Misrepresentation*

Plaintiff's attack on Defendant's fourth counterclaim, for negligent misrepresentation, also rests on its invocation of the Agreement's merger clause. For the reasons explained in the preceding section, Plaintiff's merger clause argument fails. Plaintiff also argues that Defendant has not, and cannot, allege the existence of the type of special relationship that is required to support a negligent misrepresentation claim.

The elements of a negligent misrepresentation claim under New York law include showing that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar

Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000) (internal citations omitted).  Elements (2)-(5) have been adequately pled in the counterclaim, as explained above.  Whether Defendant's counterclaim for negligent misrepresentation should be dismissed thus turns on whether Plaintiff had a duty to give correct information to Defendant as a result of a special relationship.

In determining the existence of a special relationship in the context of a negligent misrepresentation claim, the Second Circuit has held that New York law requires a fact finder to consider "whether the person making the representations held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001) (internal citations omitted).  Further, New York courts generally leave the question of whether there exists a special relationship sufficient to state a cause of action for negligent misrepresentation to the finder of fact.  Polycast Tech. Corp. v. Uniroyal, Inc., 792 F. Supp. 244, 269 (S.D.N.Y. 1992).  Defendant's negligent misrepresentation counterclaim focuses on the same allegedly fraudulent representations concerning Plaintiff's expertise in raising capital, market connections and commitments or ability to obtain them, alleging that it was induced by those representations to enter into the Agreement.  Because it cannot be said that a rational fact finder could not infer the existence of a special relationship on the basis of the facts plead, Plaintiff's motion to dismiss the negligent misrepresentation counterclaim is denied.

*Reformation of Contract*

   Defendant's fifth counterclaim seeks reformation of sections 3(b) and 3(c) of the Agreement, which pertain to Plaintiff's compensation.[4]  Defendant, alleging that the Agreement fails to reflect the parties' intent that the operative figures be 10% and 2% respectively, and asks the Court to reform the Agreement and find that the compensation for Plaintiff should be 10% of gross proceeds raised by Plaintiff and the expense allowance should be 2% of the gross proceeds raised by Plaintiff.  Pointing to statements in the Private Placement Memorandum allegedly prepared by Defendant in connection with the offering, Plaintiff contends that the counterclaim should be dismissed because Defendant has acknowledged 13% as the operative figure.  Plaintiff also argues that Defendant's request is inconsistent because on the one hand it asks the court to delete the number reference in section 3(b) of the Agreement ("13%") but on the other hand it asks the court to delete the word reference in section 3(c) of the Agreement ("three percent"), and contends that it is entitled to compensation based on all of the proceeds of the Offering.

   In New York, "[w]here there is no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."  Harris v. Uhlendorf, 24 N.Y.2d 463, 467 (1969).  Defendant has alleged adequately that the parties' true intent is not reflected in the Agreement due to scrivener's errors.  (Answer at ¶ 139-46.)  Plaintiff's argument goes to the merits of Defendant's claim, and is inappropriate for consideration on a motion to dismiss.  Therefore, Plaintiff's motion to dismiss Defendant's counterclaim for reformation is denied.

---

  [4]  Section 3(b) provides that Plaintiff is entitled to "[t]en percent (13%) [sic] of the gross proceeds raised by Mercer Capital . . . ."  Section 3(c) provides that Plaintiff is entitled to "[a] non-accountable expense allowance . . . equal to three percent (2%) [sic] of the gross proceeds raised by Mercer Capital . . . ."

*Unjust Enrichment*

Defendant's sixth counterclaim asserts that Plaintiff has been unjustly enriched by receiving payments from Defendant in excess of $600,000 that Plaintiff did not in fact earn under the Agreement. Plaintiff argues that Defendant has failed to state a claim for unjust enrichment because Plaintiff has not been unjustly enriched and because Defendant's suit for breach of contract precludes a suit for unjust enrichment. In New York, "a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." Giordano v. Thomson, 564 F.3d 163, 170 (2d Cir. 2009) (internal citations omitted). The counterclaim alleges that Plaintiff received in excess of $600,000 from Defendant despite not being entitled to this payment due to its material breach of contract (Answer at ¶¶ 149-50), and that permitting Plaintiff to retain such funds would be inequitable (Answer at ¶ 151).

Under New York law, "a party is not precluded from proceeding on both breach of contract and unjust enrichment (quasi-contract) theories where there is a bona fide dispute as to the existence of the contract, or where the contract does not cover the dispute in issue." VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008) (internal citations omitted). Defendant's counterclaims include fraud and negligent misrepresentation, and if successful, these claims could vitiate the contract and thus permit a viable claim for unjust enrichment. Plaintiff's motion to dismiss the unjust enrichment counterclaim is therefore denied.

Partial Summary Judgment Motion

In deciding a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must accept the nonmoving party's evidence as true and all justifiable

inferences are to be drawn in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). In a contract dispute, a motion for summary judgment will only be granted if "the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008) (internal citations omitted). "To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if . . . there is no extrinsic evidence that would support a resolution of the ambiguities in favor of the nonmoving party's case." Id. (internal citations omitted).

Defendant asks the Court to find as a matter of law that Plaintiff is not entitled to any compensation under the Agreement for sales that Defendant itself has made. Defendant argues that the use of the term "[E]xclusive Placement Agent" in the Agreement establishes as a matter of law that Plaintiff is entitled only to compensation for sales it made and that, if the parties intended for Plaintiff to recover even on sales made by Defendant, the term "exclusive right to sell" would have been used in the Agreement. Plaintiff argues that the parties intended for Plaintiff to recover based on all the proceeds raised in the Offering, whether by Plaintiff or Defendant, and that the language used in Sections 2(a) and 2(g) clearly shows that Plaintiff is the only party that was to sell Defendant's securities.

Defendant's argument that the use of the term "exclusive placement agent" conclusively proves that Plaintiff may only recover for sales made by itself is unpersuasive. Although under New York law the term "exclusive placement agent" is used in real estate transactions to signal that the broker is not entitled to compensation for sales made by the owner of the real estate, Ackman v. Torren, Inc., 6 A.D.2d 427, 428 (1st Dep't 1958), it is not clear that the terminology is uniformly used in the same manner in the securities arena, see, e.g., Carlin Equities Corp. v. Tamboril Cigar Co., No. 97 Civ. 4988(HB), 1998 WL 336662, at *1 (S.D.N.Y. Jun. 22,

1988) (although Carlin was the exclusive placement agent of Tamboril securities, it had rights to compensation on sales made by Tamboril).

The Court must interpret the contract to ascertain the intention of the parties. See Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997). The language used in sections 2(a) and 2(g) of the Agreement could reasonably be interpreted to indicate that the parties intended to provide Plaintiff with the right to compensation for sales made by Defendant. Section 2(a) provides that "[t]he agency granted Mercer Capital hereunder shall extend to any other equity or debt financing which the Company [Defendant] may consider during term hereof and the Company [Defendant] agrees to refer *all* proposals for *any* such financing to Mercer Capital." (Agreement at §2(a)) (emphasis added). Section 2(g) provides: "The Company [Defendant] acknowledges that it has retained the Placement Agent [Plaintiff] in connection with the Offering and that, in such capacity, only personnel employed by the Placement Agent and such other personnel as are assigned for the specific purposes of services contemplated by this Engagement Agreement to be performed by the Placement Agent will be involved in providing the services described herein." (Agreement at § 2(g).)

Plaintiff has provided the Court with extrinsic evidence such as the Private Placement Memorandum and various of Defendant's SEC filings and press releases upon which it will rely to support its construction of the ambiguous contract language. Cf. Solid Waste Institute, Inc. v. Sanitary Disposal, Inc., 120 A.D.2d 915, 917 (3d Dep't 1986) ("The party opposing summary judgment [in order to defeat the motion] must set forth extrinsic evidence upon which it will rely to support the construction it urges, otherwise there are only documents to interpret."). In light of the ambiguity of the contract language and the conflicting evidence regarding the basis for Plaintiff's

compensation, there is a genuine issue of material fact as to whether Plaintiff is entitled to recover for sales made by Defendant. Defendant's motion for partial summary judgment is, thus, denied.

In light of this ruling, Plaintiff's request to submit additional documents in opposition to Defendant's partial summary judgment motion is denied as moot.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's counterclaims and Defendant's motion for partial summary judgment are both denied in their entirety. This Memorandum Opinion and Order resolves docket entry nos. 18 and 29. The final pretrial conference in this action is scheduled for December 11, 2009, at 11:00 a.m.

SO ORDERED.

Dated: New York, New York
July 21, 2009

LAURA TAYLOR SWAIN
United States District Judge